## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

SCARLETT BEDNER, L.P., a
Pennsylvania limited partnership,

        Plaintiff,

        v.

THE BOROUGH OF FRANKLIN PARK, a
Pennsylvania political subdivision,

        Defendant.

Civ. No.    2:22-cv-269

## COMPLAINT

AND NOW, comes the Plaintiff, SCARLETT BENDER, L.P. (hereinafter referred to as "Scarlett"), by and through its counsel JONATHAN M. KAMIN, ESQUIRE, ALEXANDER W. SAKSEN, ESQUIRE, and the law firm of GOLDBERG, KAMIN & GARVIN, LLP, and files the following Complaint against THE BOROUGH OF FRANKLIN PARK averring as follows:

### PARTIES

1.    Scarlett is a Pennsylvania limited partnership with a place of business at 2543 Washington Road, Pittsburgh, Allegheny County, Pennsylvania 15241.

2.    Defendant, The Borough of Franklin Park (hereinafter referred to as the "Borough") is a municipality in Allegheny County, Pennsylvania.  Franklin Park's municipal offices are located at 2344 West Ingomar Road, Pittsburgh, Pennsylvania 15237.

3.    At all relevant times hereto, the Borough was acting as a state actor and under color of state law.

### JURISDICTION AND VENUE

4.    Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

1

5.      This Court has subject matter jurisdiction over Scarlett's claims under 28 U.S.C. Section 1331, 28 U.S.C. Sections 1343(a)(3) and 1343 (a)(4), and 42 U.S.C. Section 1983.

6.      Venue is proper before the United States District Court for the Western District of Pennsylvania under 28 U.S.C. Section 1391 because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Scarlett's claims occurred in this judicial district.

## FACTS

### *The Hartman Farms Development*

7.      Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

8.      Scarlett is the Developer of that certain residential subdivision plan located in the Borough known as "Hartman Farms" (hereinafter referred to as the "Plan").

9.      The Plan is a fifty-one (51) lot single family subdivision that was developed in two (2) phases.

10.     Scarlett commenced development of the Plan in 2014 and substantially completed *all* of its development work in 2016.

11.     As part of its development work, Scarlett completed the installation of public infrastructure components including, but not limited to (a) stormwater management facilities; (b) utility infrastructure; (c) roads; (d) sidewalks; and other public improvements (collectively hereinafter referred to as the "Public Improvements").

12.     Scarlett completed all of the Public Improvements in accordance with the Borough's approved specifications and municipal requirements.

13.     All of the Public Improvements were inspected by the Borough's authorized representatives during construction, and after the completion of the same.

2

14.     Scarlett paid the costs associated with such inspections.

### *The Parties' Dispute*

15.     Over the past several years, a number of disputes have arisen between Scarlett and the Borough over the Borough's insistence that Scarlett perform certain work which is not required, and not included within the scope of the work set forth in the approved plans.

16.     The parties also disagree about Scarlett's obligations to perform certain corrective work on various Public Improvements, which were installed in accordance with the Borough's plans and specifications and inspected by the Borough, but whose condition has now changed based on the passage of time, as many of these Public Improvements were installed more than five (5) years ago.

17.     In accordance with the terms of the Pennsylvania Municipalities Planning Code, Scarlett previously requested that the Borough release certain letters of credit (collectively hereinafter referred to as the "LOCs") that Scarlett posted with the Borough to secure Scarlett's performance of its obligations to construct the Public Improvements.

18.     Although the Borough's Municipal Engineer and Borough Council authorized the release of two (2) of the applicable LOCs, the Municipal Administration refused to release any of the LOCs despite their express obligations under the Pennsylvania Municipalities Planning Code (hereinafter referred to as the "MPC").

19.     In fact, in violation of the MPC, the Borough unilaterally (and without appropriate calculations and/or supporting information) sought to retroactively increase the amounts of two (2) of the LOCs, and to hold the remaining LOCs hostage, in order to wrongfully leverage and compel Scarlett to perform work which Scarlett was not legally required to perform.

3

20. On March 24, 2020, despite admitting that the work bonded by LOCs 290 and 317 was complete, the Borough refused to release the applicable LOCs until Scarlett increased LOCs 311 and 353 from $10,500.00 to $16,910.00 and from $19,460.00 to $28,490.00, respectively. A true and correct copy of the March 24, 2020 Letter from Franklin Park to Scarlett is attached hereto as **Exhibit "A"** and are incorporated by reference herein.

21. The Borough claimed that a "lapse in time" required both the increase in LOCs 311 and 353 and somehow justified its retention of LOCs 290 and 317.

22. However, nothing in the MPC validates a retroactive increase in financial security due to "lapse in time" or a municipality retaining financial security after acceptable completion of construction work because it wants the Developer to increase other financial security.

23. Notably, many of the delays associated with the release of the LOCs arose from the Borough's failure to timely complete annual inspections from 2016 through 2020, and from the Borough's imposition of new conditions on Scarlett.

24. In order to validate a bond increase request, the Borough was required to have an Engineer compare "Actual Cost" with "Estimated Cost" and then explain any claimed deficiency.

25. The Borough failed to complete this required work or provide the requisite analysis to justify an increase in any LOC when demanding the same from Scarlett.

26. Similarly, the Borough also failed to provide a legally sufficient rationale for retaining LOCs 290 and 317, which Senate Engineering, Inc. (hereinafter referred to as "Senate"), its own Municipal Engineer, recommended releasing.

27. After a series of meetings and discussions, despite Scarlett's prior good faith overtures, it became clear to Scarlett that the Borough was not going to adhere to its own Ordinances and/or the MPC in any of its dealings with Scarlett.

4

28.     On October 7, 2021, in accordance with the terms of the MPC, Scarlett sent two (2) certified letters to the Borough (one for Phase 1 and the other for Phase 2) (collectively hereinafter referred to as the "Certified Letters") formally notifying the Borough that the appropriate Public Improvements have been completed by Scarlett, and formally requested acceptance of the Public Improvements pursuant to the MPC. True and correct copies of the Certified Letters are attached hereto as **Exhibit "B"** and **Exhibit "C"** and are incorporated by reference herein.

29.     In accordance with the terms of the MPC, the Borough's Engineers were also copied on the Certified Letters.

30.     The Certified Letters were received by the Borough on October 15, 2021. True and correct copies of the receipts for such letters are attached hereto as **Exhibit "D"** and are incorporated by reference herein.

31.     Pursuant to Section 510(a) of the MPC, the Borough was required to send to the Certified Letters to the Borough Engineer, within ten (10) days of receipt of the same, and to formally direct its Engineer to inspect the Public Improvements.

32.     On information and belief, the Borough did not authorize, nor direct, its Engineer to inspect the Public Improvements.

33.     Pursuant to Section 510(a) of the MPC, the Borough Engineer ". . . shall, thereupon, file a report, in writing, with the municipal governing body and shall promptly mail a copy of the same to the developer by certified or registered mail. The report shall be made and mailed within 30 days after receipt by the municipal engineer of the aforesaid authorization from the governing body; said report shall be detailed and shall indicate approval or rejection of said improvements, either in whole or in part, and if said improvements, or any portion thereof, shall not be approved or shall be rejected by the municipal engineer said report shall contain a statement of the reasons

for such approval or rejection." See 53 P.S. §10510(a)(West 2022).

34.    ***Scarlett never received the report from the Borough Engineer.***

35.    On information and belief, the Borough Engineer did not produce such report, nor did the Borough Engineer mail the same to Scarlett.

36.    Pursuant to Section 510(b) of the MPC, "[t]he municipal governing body shall notify the developer, within 15 days of the receipt of the engineer's report, in writing by certified or registered mail of the action of said municipal governing body with relation thereto." See 53 P.S. §10510(b)(West 2022).

37.    ***Scarlett never received written notice from the municipal governing body.***

38.    On information and belief, the Borough did not timely send such notice to Scarlett.

39.    Section 510(c) of the MPC provides "[i]f the municipal governing body ***or the municipal engineer fails to comply with the time limitation provisions contained herein, all improvements will be deemed to have been approved and the developer shall be released from all liability, pursuant to its performance guaranty bond or other security agreement.***" See 53 P.S §10510(c) (West 2022)(Emphasis Added).

40.    As both the Borough and/or the Borough Engineer failed to comply with the time limitation provisions contained in Section 510 of the MPC, all of the improvements installed by Scarlett are hereby deemed approved as a matter of law.

41.    On December 10, 2021, Scarlett filed a Complaint in *Mandamus* in the Allegheny County Court of Common Pleas to obtain the relief to which it is legally entitled, including, but not limited to, acceptance of the aforementioned infrastructure and release of the posted bonds. See Scarlett Bedner, L.P. v. Franklin Park Borough Council, Allegheny County Court of Common Pleas Docket No. GD-21-014864 (hereinafter referred to as the "Mandamus Complaint").

42.     On December 13, 2021, Scarlett posted the relevant portions of the property with notice of the filing of the Mandamus Complaint.

43.     On December 16, 2021, in response to Scarlett's filing of the Mandamus Complaint, without the right or privilege to do so, the Borough elected to seize various letters of credit that Scarlett had posted with Washington Financial Bank (hereinafter referred to as "WFB") as part of its effort to engage in unfounded retribution and to penalize Scarlett for exercising its legal rights.

44.     Specifically, the Borough sent four (4) letters to WFB demanding the Washington Financial Bank release funds for the following Letters of Credit:

      a.     Letter of Credit 290 in the amount of Eleven Thousand, Eight Hundred Dollars ($11,800.00), dated March 10, 2014 and amended November 24, 2014, related to the Hartman Farms Phase I Improvement Construction Agreement ("LOC 290");

      b.     Letter of Credit 311 in the amount of Ten Thousand, Five Hundred Dollars ($10,500.00), dated January 6, 2015 and amended January 13, 2015, related to the Hartman Farms Phase I Development Agreement ("LOC 311");

      c.     Letter of Credit 317 in the amount of Three Thousand, Seven Hundred and Twenty Dollars ($3,720.00), dated March 25, 2015 related to the Hartman Farms Improvement Construction Agreement and Erosion Controls ("LOC 317"); and

      d.     Letter of Credit 353 in the amount of Nineteen Thousand, Four Hundred and Sixty Dollars ($19,460.00), dated June 30, 2016 and amended January 2, 2018, related to the Hartman Farms Phase II Development Agreement ("LOC 353").

See Letters from Borough of Franklin Park to WFB, incorporated by reference and attached hereto as **Exhibits "E" - "H,"** respectively ("Demand Letters").

7

45.     Significantly, the Borough seized all of these Letters of Credit despite: (a) the determination of their Municipal Engineer, Senate, that the work associated with LOC 290 and LOC 317 had been completed (see **Exhibits "I" and "J"**) directing that LOC 290 in the amount of $11,800.00 be reduced from $11,800.00 to $0.00,  and that LOC 317 in the amount of $3,720.00 be reduced by $3,720.00 to $0.00,  and (b) the approval of these reductions by Borough Council (see **Exhibit "K"**).

46.     The Borough's actions in wrongfully seizing LOCs 290 and 317 (both of which secure work which the Borough admits is complete) is a blatant attempt to convert funds to which it is no longer entitled given its approval of the release of the same, and the legal effect of its "deemed approval" pursuant to the Mandamus Complaint.

47.     The Demand Letters are a black letter example of an unlawful taking in violation of the United States Constitution, conversion, misrepresentation, fraud, and defamation.

### Count I – 42 U.S.C. §1983 (Due Process)

48.     Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

49.     Under the Fifth Amendment to the Constitution, no person may be deprived of life, liberty, or property without due process of law. U.S. Const. Ann., Amendment V.

50.     The Fourteenth Amendment applies the protections of the Fifth Amendment to state actors. U.S. Const. Ann., Amendment XIV.

51.     Scarlett has a constitutionally protected interests in the funds secured by the LOCs. Marchese v. Umstead, 110 F. Supp. 2d 361, 367 (E.D. Pa. 2000) (citations omitted) (right of corporation to bring equal protection and due process claims under Section 1983 precludes individual shareholder civil rights suits on behalf of corporation).

8

52.     By issuing the Demand Letters, the Borough, acting under color of state law, deprived Scarlett of its constitutionally protected right to these funds without due process of law.

53.     By refusing to release LOCs 290 and 317, after its own Engineer and governing body confirmed that Scarlett completed the work secured by those LOCs, the Borough, acting under color of state law, deprived Scarlett of its constitutionally protected right to these funds without due process of law.

54.     By issuing the Demand Letters, and unlawfully seizing the funds associated with the LOCs, despite being fully aware that the "deemed approval," as a result of the Borough's failure to comply with MPC, prohibits the Borough from legally seizing the same.

55.     These actions harmed Scarlett as detailed below.

## Count II – 42 U.S.C. §1983 (First Amendment Retaliation)

56.     Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

57.     Under the First Amendment to the Constitution, the government shall not prohibit the free exercise of speech. U.S. Const. Ann., Amendment 1.

58.     The Fourteenth Amendment applies the protections of the First Amendment to state actors. U.S. Const. Ann., Amendment XIV.

59.     Scarlett has a constitutionally protected right to avail itself of the legal system to secure its "deemed approval," which it is entitled to as a matter of law.

60.     Scarlett is entitled to be free from government retaliation for its exercising its free speech rights. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Availing oneself of the right to seek redress in court is protected first amendment activity that a state actor cannot retaliate against. Cephas v. George W. Hill Corr. Facility, No. CIV.A. 09-6014, 2010 WL

2854149, *3 (E.D. Pa. July 20, 2010) (citing <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir.2003) for proposition that filing suit is protected first amendment activity and that withholding of prisoner funds shortly after prisoner filed suit was sufficient to establish a causal connection between protected activity and retaliatory behavior).

61. By issuing the Demand Letters, and seizing, in particular, LOCs 290 and 317 (after its own Engineer and governing body confirmed that Scarlett completed the work secured by those LOCs), the Borough, acting under color of state law, sought to punish Scarlett for exercising its constitutionally protected rights.

62. By issuing the Demand Letters, and wrongfully claiming in the Demand Letters that Scarlett was in violation of certain provisions of its Developer's Agreement and, in particular Scarlett's obligation to provide erosion controls, the Borough, acting under color of state law, sought to intentionally punish Scarlet for exercising its constitutionally protected rights by damaging Scarlett's banking relationships.

63. These actions harmed Scarlett as detailed below.


## **Count III – Breach of Contract (LOC 290 and LOC 317)**

64. Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

65. Scarlett obtained LOC 290 and LOC 317 to fulfill its obligation to the Borough and to secure performance of certain construction obligations at Hartman Farms.

66. In return, the Borough agreed to both hold LOC 290 and LOC 317 in trust pending completion of that work and not execute on the financial security unless Scarlett failed its performance obligations.

67.     The Borough breached its duty to hold LOC 290 and LOC 317 in trust by: (a) refusing to release LOC 290 and LOC 317 after its Engineer recommended reducing the same to $0.00 and cancelling the same; and (b) issuing the Demand Letter asking Scarlett's Bank to release the funds securing LOC 290 and LOC 317, despite knowing that it was not entitled to receive the same as a result of Senate's determination and the operation of "deemed approval" under the MPC.

68.     The Borough's breach caused Scarlett damages as set forth below.

## Count IV – Breach of Contract (LOC 311 and LOC 353)

69.     Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

70.     Scarlett obtained LOC 311 and LOC 353 to fulfill its obligation to the Borough and to secure performance of certain construction obligations at Hartman Farms.

71.     In return, the Borough agreed to both hold LOC 311and LOC 353 in trust pending completion of that work, and not execute on the financial security unless Scarlett failed its performance obligations.

72.     The Borough breached its duty to hold LOC 311 and LOC 353 by issuing the Demand Letters asking WFB to release the funds securing LOC 311 and LOC 353, despite knowing that it was not entitled to receive the same as a result of the operation of "deemed approval" under the MPC.

73.     The Borough's breach caused Scarlett damages as set forth below.

## Count V – Breach of Duty of Good Faith and Fair Dealing (all LOCs)

74.     Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

11

75.     As part of the contractual relationship established by LOCs 290, 311, 317, and 353, the Borough had a duty to act in good faith and deal fairly with Scarlett.

76.     In refusing to release LOCs 290 and 317 after its own Engineer recommended releasing the same and, instead, holding those LOCs hostage until Scarlett agreed to increase LOCs 311 and 353, the Borough breached this duty.

77.     In asking that Scarlett increase LOCs 311 and 353 without following the procedures set forth in the MPC and having a reasonable basis for the same, Franklin Park further breached this duty.

78.     In sending the Demand Letters, despite knowing that it had no right or privilege to do so given the "deemed approval," the Borough continued its breach of this duty.

79.     The Borough's breach of its duty of good faith and fair dealing caused Scarlett damages as set forth below.

## **Count VI – Bad Faith**

80.     Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

81.     The Borough performed its contractual duties with Scarlett in bad faith by:

    a.   Refusing to release LOCs 290 and 317;

    b.   Asking that LOCs 311 and 353 be increased before releasing other LOCs; and

    c.   Demanding payment under the LOCs.

82.     The Borough's bad faith caused Scarlett financial and reputational harm, defamed Scarlett's business, and interfered with Scarlett's banking relationship, which entitles Scarlett to treble damages and payment of attorney's fees in addition to the damages set forth below.

**Count VII – Breach of Fiduciary Duty**

83.    Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

84.    By accepting the LOCs to secure the work at Hartman Farms, the Borough functioned as a fiduciary for Scarlett.

85.    The Borough breached that duty by self-dealing and acting in self-interest in refusing the release LOCs 290 and 317 and then collecting on all four LOCs.

86.    The Borough's breach of its duty caused Scarlett damages as set forth below.


**Count VIII - Negligence**

87.    Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

88.    The Borough had a duty to hold the monies memorialized in the LOCs in trust and not use them for illegal, illicit, and self-dealing reasons.

89.    By both refusing the release LOCs 290 and 317 and then collecting on all four LOCs, the Borough breached this duty.

90.    The Borough's breach of its duty caused Scarlett damages as set forth below.


**Count IX - Conversion**

91.    Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

92.    In obtaining the funds demanded by the Demand Letters, the Borough converted funds Scarlett owned.

93.    The Borough's conversion caused Scarlett loss of both its funds and other damages as set forth below.

13

## Count X – Intentional Interference with Banking Relationship

94.     Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

95.     Scarlett has an existing business relationship with WFB, both with respect to the LOCs but also in other dealings.

96.     As the recipient of the LOCs, the Borough was aware of the business relationship between Scarlett and WFB.

97.     In issuing the Demand Letters, the Borough deliberately interfered with the Scarlett-WFB relationship by both converting monies memorialized in the LOCs and defaming Scarlett's reputation with the Bank.

98.     As a result of the Borough's actions, Scarlett suffered damages as set forth below.


## Count XI – Negligent Interference with Banking Relationship

99.     Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

100.    Scarlett has an existing business relationship with WFB, both with respect to the LOCs but also in other dealings.

101.    As the recipient of the LOCs, the Borough was aware of the relationship between Scarlett and WFB.

102.    In issuing the Demand Letters, the Borough negligently interfered with the Scarlett-WFB relationship by both converting monies memorialized in the LOCs but also defaming Scarlett's reputation with the Bank.

103.    As a result of the Borough's actions, Scarlett suffered damages as set forth below.

## Count XII – Defamation/Libel

104.    Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

105.    In seeking collection of the funds secured by the LOCs and sending the Demand Letters, the Borough falsely stated Scarlett was in violation of its construction obligations at Hartman Farms.

106.    The Demand Letters, which Franklin Park sent to WFB, constitute a publication to a third party.

107.    The Demand Letters are in writing.

108.    In so publishing, the Borough knew the statements were false, as it – at the time of sending the same – had a report from its own Engineer stating that conditions required to release two (2) of the four (4) LOCs occurred (LOCs 290 and 317).

109.    It was also aware that there was no condition upon which it could collect on the other two (2) LOCs (LOCs 311 and 353).

110.    The defamatory Demand Letters directly damaged Scarlett as set forth below.


## Count XIII– Fraud

111.    Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

112.    As detailed above, in sending the Demand Letters, the Borough made several material misrepresentations, including:

     a.   It was entitled to collect under the LOCs;

     b.   Scarlett was in breach of its construction obligations at Hartman Farms;

     c.   Scarlett was responsible for significant delays in construction; and

     d.   That the development was in jeopardy.

15

113.    When issuing the Demand Letters, the Borough was aware the statements were false and/or made the statements recklessly because: (a) its Engineer recommended two (2) of the LOCs be cancelled; (b) it had inspected the Hartman Farms Development and was aware there were no significant delays warranting collection of a LOC; (c) it knew Scarlett was not in breach of its development obligations; and (d) it knew Scarlett was financially sound.

114.    WFB relied on the Demand Letters and sent the Borough the funds securing the LOCs.

115.    As a result of the Demand Letters and the Borough's other fraudulent conduct, Scarlett has suffered damages as set forth below.

## **Count XIV – Unjust Enrichment**

116.    Scarlett incorporates the foregoing paragraphs as is set forth in full herein.

117.    As detailed above, the Borough collected in excess of $45,000.00 under the LOCs.

118.    The Borough is not entitled to these funds because neither any Engineer nor the MPC permits it to collect the same.

119.    As a result, Franklin Park has been unjustly enriched in the amount of $45,000.00.

WHEREFORE, for all of the foregoing reasons and under the above causes of action, one or more of which supports the below damages, Plaintiff Scarlett Bedner, L.P. respectfully requests this Court enter judgment in its favor and against Defendant Borough of Franklin Park and grant Scarlett Bedner L.P. the following relief:

        a.    A declaration that all conditions required for release of all Letters of Credit (290, 311, 317, and 353) issued by WFB on Scarlett Bedner, L.P.'s behalf are satisfied and that those Letters of Credit be cancelled;

16

b.  Reimbursement of the amounts collected under Letters of Credit 290, 311, 317, and 353, together with pre- and post-judgment interest at the prevailing rate;

c.  Damages from lost opportunity of use of the funds illegally collected, which amount will be proven at trial;

d.  Damages resulting from the Borough's defamatory and libelous comments, which amount will be proven at trial;

e.  Damages due to Scarlett's lost business reputation, which amount will be proven at trial;

f.  Damages due to the Borough's intentional and wrongful violation of Scarlett's civil rights, in an amount which will be proven at trial;

g.  Punitive and/or treble damages under one or more the above theories of relief;

h.  Pre- and Post-judgment interest at the prevailing rate; and

i.  An award of Scarlett's attorneys' fees, costs, and what other and further relief this Court deems appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

GOLDBERG, KAMIN & GARVIN, LLP

BY: _____

JONATHAN M. KAMIN, ESQUIRE
ALEXANDER W. SAKSEN, ESQUIRE
COUNSEL FOR PLAINTIFF